# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

THE ESTATE OF SHIRLEY T. COX, by
and through Betty M. Smith as personal
representative, JOHN E. BALLEW,
by and through Judith A. Ballew as attorney-in-
fact, and THE ESTATE OF ROGER J. LAPP,
by and through Mark F. Lapp as personal
representative,

    Plaintiffs,

v.                                    CASE NO. 8:18-cv-381-T-02AAS

MARCUS & MILLICHAP, INCORPORATED
and MICHAEL BOKOR,

    Defendants.
_____/

# **O R D E R**

**BEFORE THE COURT** is Plaintiffs' Motion to Remand (Dkt.31), Defendant Michael Bokor's Opposition (Dkt. 35), Defendant Marcu & Millichap, Incorporated's Joinder in Bokor's Opposition (Dkt. 36), Plaintiffs' Opposed Motion for Leave to Conduct Limited Jurisdictional Discovery and to Stay or Extend the Time for Moving for Class Certification (Dkt. 39), and Defendant

Bokor's Opposition (Dkt. 43). After careful consideration of the submissions of the parties, the applicable law, and the entire file, the Court grants remand.

## BACKGROUND

This case was timely removed from state court on February 14, 2018, by Defendant Michael Bokor. (Dkt. 1). Defendant Marcus & Millichap, Incorporated ("MMI") joined in the removal. (Dkt. 5). Removal was based on the Class Action Fairness Act of 2005, ("CAFA"), 28 U.S.C. § 1332(d)(2), which requires the amount in controversy exceed $5,000,000 exclusive of interest and costs, at least 100 proposed class members, and the citizenship of at least one class member to be different from at least one of the defendants. (Dkt. 1, ¶ 5). The complaint alleges a class of 3,000 members, actual losses in excess of $900,000,000, and the class members' citizenship as Florida and Defendant MMI's citizenship as Delaware or California. (Dkt. 2, ¶¶ 2, 8, 16 & 37).

This action alleges that both Defendants were part of a scheme to market and sell twenty-two skilled nursing facilities in Florida that they knew were operating with invalid licenses. MMI is a highly sophisticated real estate and business broker with much of its business directed to seniors housing investment properties. Bokor has worked in the seniors housing industry for more than ten years ranging from chief financial officer in the Avante Group to an operator of

multiple nursing home management companies. The facilities at issue are marketed as a portfolio managed by TL Management LLC, a Florida LLC with its principal place of business in New York. TL Management LLC is owned and managed by two individuals, Eliezer Scheiner and Teddy Lichtschein. The individuals owned, either jointly or individually, the real and personal property of the facilities. The complaint refers to the facilities' ownership structure by the individuals as the "landowner entities."

These landowner entities allegedly operated as a common enterprise, together with Bokor's two management companies, SNF Management, Inc. and Reliant Health Care Services, Inc., as well as TL Management LLC. The common enterprise allegedly aimed to increase the profit of the facilities "at the expense of the health and welfare of the residents, including Plaintiffs and the Class members." (Dkt. 2, ¶ 56). The residents suffered from substandard levels of daily care, which placed their health at risk. The facilities were allegedly each operated by a licensed Medicaid provider. The landowner entities, however, controlled the licenses, certifications, and certificates of need for the facilities through lease agreements.

As part of the various schemes, Plaintiffs allege undercapitalized shell entities were formed to evade reporting requirements and obtain licenses. The

shell entity licensees used either Bokor's two management companies or TL Management LLC to run the facilities without disclosing the companies to the Agency for Health Care Administration (AHCA).  Plaintiffs claim the purpose of concealment was to defraud residents to receive payments and reimbursements from them and Medicaid or Medicare despite the facilities' operating under void licenses.

The five-count complaint alleges two counts against MMI for aiding and abetting breach of fiduciary duties to the residents and civil remedies for criminal practices, two counts against Bokor for the same two claims, and one count against both for civil conspiracy.  The facilities are located solely in Florida.

## DISCUSSION

Although there is a pending motion to dismiss, this Court must rule first on the motion to remand to determine whether it lacks jurisdiction.  *See Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) ("[A] federal court must remand for lack of subject matter jurisdiction notwithstanding the presence of other motions pending before the court.") (citations omitted)); *see also Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1275 n.22 (11th Cir. 2000).  The allegations of the complaint and notice of removal establish the prerequisites for removal under CAFA.  Plaintiffs do not dispute Defendants have carried their

burden to establish federal jurisdiction. Rather, they seek to remand based on the "local controversy" exception pursuant to 28 U.S.C. § 1332(d)(4). *See Hunter v. City of Montgomery, Ala.*, 859 F.3d 1329, 1334 (11th Cir. 2017) (noting that remand based on CAFA exception challenges exercise of subject matter jurisdiction not whether jurisdiction exists in the first place).

Plaintiffs bear the burden of proving a statutory exception to jurisdiction already established. *See Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1164 (11th Cir. 2006). The standard of proof for this burden is preponderance of the evidence. *See Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1208-1211 (11th Cir. 2007) (applying preponderance standard in CAFA removal context). There is no longer, however, any presumption in favor of remand in deciding CAFA jurisdictional requirements. *Dart v. Cherokee Basin Operating Co. v. Owens*, 135 S.Ct. 547, 554 (2014); *Dudley v. Eli Lilly & Co.*, 778 F.3d 909, 912 (11th Cir. 2014). Jurisdictional facts must be viewed as they stand at the time of removal. *Dudley*, 778 F.3d at 913 (citation omitted).

**<u>Local Controversy Exception</u>**

The narrow local controversy exception aims to keep in state court "a truly local controversy – a controversy that uniquely affects a particular locality to the exclusion of all others." *Evans*, 449 F.3d at 1164 (citation omitted). Under the

local controversy exception as applied here, a district court *shall* remand when: 1) more than two-thirds of the Plaintiff class members are Florida citizens; 2) Mr. Bokor is a Florida defendant from whom "significant relief" is sought and whose conduct forms a "significant basis" for the claims made by Plaintiffs; 3) the injuries resulting from the alleged conduct of each Defendant happened in Florida; and 4) no other similar class action has been filed against Defendant during the preceding three years.  28 U.S.C. § 1332(d)(4).

<u>*Two-Thirds Citizenship*</u>

The biggest hurdle Plaintiffs face is satisfying the first factor – that more than two-thirds of the class members were Florida citizens at the time the complaint was filed.  In the context of diversity jurisdiction, citizenship is equivalent to domicile, which requires both physical presence (residence) and an intention to remain indefinitely.  *McCormick v. Aherholt*, 293 F.3d 1254, 1257-58 (11th Cir. 2002) (citations omitted).  One's domicile is "the place of his true, fixed and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom." *McCormick*, 293 F.3d at 1257-58 (internal quotation omitted).  The typical evidence used to show intent to remain includes voter or vehicle registration, driver's license, employment records, utility and phone bills, tax returns, banking statements, business or

property ownership, and sworn statements of intent. *See*, *e.g.*, *Sunseri v. Macro Cellular Partners, Ltd.*, 412 F.3d 1247, 1249 (11th Cir. 2005).

The named Plaintiffs are citizens of Florida, which Defendants do not contest. To show the class members – residents of the facilities at any time from January 2014 through January 2018 – are Florida citizens, Plaintiffs provide this Court with studies, empirical data, a 2015 Nursing Home Data Compendium issued by the Centers for Medicare and Medicaid Services, and a 2016 American Community Survey from the U.S. Census Bureau. (Dkt. 31-1 - 31-12). Not only does the 2015 Compendium provide nursing home data and statistics nationwide, but it provides such information about Florida specifically. (Dkt. 31-1).

The studies show generally that nursing homes attract many of their residents – eighty percent (80%) – from the residents of the local area or same county as the facility. (Dkts. 31-2 - 31-5). One study shows that in Florida specifically, eighty-seven and one-half percent (87.5%) of the nursing home residents resided in the same county as the facility and 98.4 % resided in Florida just prior to entry. (Dkt. 31-2, at 8 (Table 1), and 9 ("Florida (87.5%) ha[s] some of the highest rates of admissions from the local county."). Plaintiffs submit that this fact proves that more likely than not "each of the proposed class members was

residing in Florida immediately prior to their admissions to the facilities." (Dkts. 31, at 6-7; and 31-1 - 31-12).

The 2015 Compendium bolsters Plaintiffs' contention that they have proven more likely than not that each of the class members was residing in Florida immediately prior to their admission. The national study compiling data and statistics from each state shows that eighty-five percent (85%) of nursing home residents are sixty-five (65) or older and that in Florida, at least eight-one and nine-tenths percent (81.9%) need assistance with at least one activity of daily living. (Dkt. 31-1, at 160-61 (Ex. A at 15-52), and at 165-66 (Ex. A at 156-57)). In accord with Plaintiffs' assertion, this shows that more than eight out of ten nursing home residents in Florida are 65 or older and require some daily assistance. Another study shows that the average distance between a nursing home and its potential customer is 19.2 miles. (Dkt. 31-6, at 14 (Ex. F, at 12)). Yet another study, albeit from another state, supports the conclusion that seventy-four percent (74%) of all hospital patients traveled less that twenty-five miles to receive care. (Dkt. 31-7, at 10 (Ex. G, at 9)).

Based on these submissions, individuals who choose or land in a nursing facility hale from the proximate area or are discharged from their local hospital to a skilled nursing facility. Thus, if the class members left the facilities to return to

their homes, their residences were much more likely than not to be located in Florida. Defendants' unsupported argument that the facilities' residents may likely end up in a Florida skilled nursing facility while vacationing or visiting and, if discharged, may return to some other home state, is unpersuasive.

As to the intent-to-remain portion of the citizenship requirement, Plaintiffs argue that the census data and studies evidence that more likely than not, the residents of the facilities intend or intended to remain in Florida. Of the less than fifteen percent (15%) of all Americans who moved between 2015 and 2016, less than four percent (4%) of those moved out of the state. (Dkt. 31-8, at 3 (Ex. H, at 2)). As to Florida specifically, the data spanning 2012 through 2016, mirrors this result. (Dkt. 31-9, at 4 (Ex. I, at 3). Another study shows that of the individuals fifty-five and older, only ten percent (10%) move at all, regardless of whether the move is in-state or out-of-state. (Dkt. 31-10, at (Ex. J, at 3)). Several years ago, only nineteen percent (19%) of individuals sixty-five or older stated that they intended to move in the next five years, and the remaining seventy-nine percent (79%) stated they were "not too or not likely at all" to move. (Dkt. 31-11, at 25-27 (Ex. K, at 22-24)). A more recent study shows that ninety percent (90%) of seniors intended to continue living in their current residences for the next five to ten years. (Dkt. 21-12, at 25 (Ex. L, at 24)).

Defendants rely heavily on the constraints placed on a singular "common sense" approach to fulfillment of the local controversy exception. The Court is well aware that it may not resort to guesswork as to the citizenship of the nursing home residents at the time the action was filed. *See Floyd v. City of Albany*, No. 1:10-cv-164 (WLS), 2011 WL 13244103, at *6-7 (M.D. Ga. Sept. 30, 2011) (finding a common sense approach not supported by *Evans* or the local controversy exception); *Gavron v. Weather Shield Mfg., Inc.*, No. 10-22088-Civ, 2010 WL 3835115, at *3 (S.D. Fla. Sept. 29, 2010) (finding that guesswork is impermissible under *Evans*, but recognizing that plaintiff put forth no evidence of citizenship); *In re Checking Account Overdraft Litig.*, No. 09-MD-2036-JLK, 2012 WL 12877749, at *5 (S.D. Fla. July 25, 2012) (citing *Gavron* and noting doubts regarding a CAFA exception are resolved in favor of exercising federal jurisdiction); *Casey v. Florida Coastal Sch. of Law, Inc.*, No. 12-20785-Civ, 2014 WL 11798521 (S.D. Fla. Sept. 30, 2014) (following *Gavron* regarding common sense deductions). Requiring individual interviews of 2000 class members (2/3 of 3000) is unrealistic, however, and may prove to be of no avail. *See Anderson v. King Am. Finishing, Inc.*, No. 1:11-cv-2258-JEC, 2013 WL 1213267, at *3 (N.D. Ga. Mar. 25, 2013); *see also Evans* (finding plaintiff had not proven more than

two-thirds class members were citizens based on attorney's suspect selection method for interviewing over 10,000 potential class members).[1]

The Court finds the just-cited cases denying remand distinguishable. In this case, unlike *Gavron* where no evidence was submitted at all, the Plaintiffs have provided evidence of citizenship of the class members. Unlike *Casey* where only one magazine article was offered to prove citizenship, Plaintiffs set forth evidence specific to Florida. This case is also distinguishable from *Heretick v. Publix Super Markets, Inc.*, 841 F.Supp.2d 1247 (M.D. Fla. 2012). In *Heretick*, the plaintiffs pointed to the defendant Publix's website's publication that more than two-thirds of Publix's stores are located in Florida and argued that the number of stores equated with the number of allegedly cheated Publix ATM users. The district judge concluded too many inferences were necessary.

Although, as Defendants point out, some of the studies may not focus specifically on Florida, the Court finds the data concerning nursing homes nationwide, together with the specific Florida studies, is sufficient to attribute citizenship to the putative class in Florida. Faced with the persuasive submissions of Plaintiffs, who carry the burden of proof of the exception to the CAFA, the

---

[1] For a case finding the first factor of the local controversy exception was met, see *Wiand v. Stoel Rives LLP*, No. 8:16-cv-1133-T-36JSS, 2016 WL 8931304 (M.D. Fla. Dec. 27, 2016).

Court finds that Plaintiffs have shown by a preponderance of the evidence that two-thirds of the class members are citizens of Florida.

*Significant Defendant Test*

The only other contested factor is whether "significant relief" is sought from Defendant Bokor and whether his conduct forms a "significant basis" for the claims. The complaint seeks joint and several liability against both Defendants for all damages. (Dkt. 2, ¶ 131). Courts have held that allegations of joint and several liability for the damages sought constitute "significant relief" from all defendants. *See*, *e.g.*, *Lefevre v. Connextions, Inc.*, No. 3:13-cv-1780-D, 2013 WL 6241732 (N.D. Tex. Dec. 3, 2013) (relying on *Evans*' definition of "significant relief" to include both local and non-local defendants where damages are equally sought from all defendants).

The Eleventh Circuit has noted that "whether a putative class seeks significant relief from an in-state defendant includes not only an assessment of how many members of the class were harmed by the defendant's actions, but also a comparison of the relief sought between all defendants and each defendant's ability to pay a potential judgment." *Evans*, 449 F.3d at 1167. *Evans* involved eighteen defendants, whereas only two defendants may be compared here. Comparing the relief sought between MMI and Bokor, the Florida defendant, the

Court finds that there is no evidence that Bokor is any less or more significant with respect to liability. Indeed, the alleged scheme was meted out by equal wrongdoers. Nor is there anything that would indicate that Bokor with his various entities is any less capable of paying a potential judgment than MMI. Whether Bokor forms a "significant basis" as opposed to MMI for the Plaintiffs' claims, again, rests on the alleged scheme that contemplates each Defendant as equally culpable. Remand is warranted under the local controversy exception.

**<u>Discretionary Exception</u>**

To consider the discretionary exception under 28 U.S.C. § 1332(d)(3), the class membership must be composed of greater than one-third but less than two-thirds citizens of Florida. If the Court had not determined that two-thirds of the class were Florida citizens, the Court would consider the six factors listed in the statute. To that end, the Court finds that this matter is purely local and is not one considered of national importance. The claims will be governed by the laws of Florida and were not pled to avoid federal jurisdiction. There is a distinct nexus between this Florida action involving only Florida facilities, and the alleged torts committed and injuries sustained here. No other class actions asserting these claims have been brought in the preceding three years.

**Limited Discovery**

Plaintiffs seek limited jurisdictional discovery to provide evidence that the class members were citizens of Florida when this action was filed, although the Court finds additional evidence unnecessary. In any event, it should be noted that the posture of this case is different from one where the defendant is requesting the opportunity to conduct discovery if removal in the first instance is challenged.[2] Here, removal jurisdiction has been established, and the issue is whether an exception to jurisdiction applies. The case law allows limited discovery for the defendant to prove removal jurisdiction, not for the plaintiff to prove remand. *See Kelly v. State Farm Mut. Auto Ins. Co.*, No. 5:10-cv-194-Oc-32GRJ, 2010 WL 9888731, at *8 (M.D. Fla. Sept. 23, 2010) ("[T]here would be no reason to allow the Plaintiffs to take limited jurisdictional discovery before a court addresses a motion to remand."); *Waithe v Arrowhead Clinic, Inc.*, No. 409-021, 2010 WL 5463106, at *4 (S.D. Ga. Dec. 29, 2010) (declining to allow plaintiffs limited jurisdictional discovery on local controversy exception because plaintiffs could move for remand at any time during the course of discovery).[3] Some courts,

---

[2] In the notice of removal, Defendant Bokor requested the opportunity to conduct discovery should the propriety of removal be challenged. (Dkt. 1, ¶ 19).

[3] At least one court, however, has determined that the issue may be revisited either in the motion for class certification or for summary judgment. *See In re Checking*

however, have requested additional evidence from plaintiffs in this posture. *See*, *e.g.*, *Floyd*. Having already determined that Plaintiffs met their burden of proving an exception to CAFA applies, the Court denies the motion for discovery.

It is **ORDERED AND ADJUDGED** as follows:

1) Plaintiffs' Opposed Motion for Leave to Conduct Limited Jurisdictional Discovery (Dkt. 39) is denied.

2) Plaintiffs' Motion to Remand (Dkt.31) is granted.

3) Plaintiffs' Motion to Stay and to Extend the Time for Moving for Class Certification (Dkt. 39) is denied as moot.

4) The Clerk is directed to remand this case to the Thirteenth Judicial Circuit, in and for Hillsborough County, Florida, and to close the case after remand is effected.

**DONE AND ORDERED** at Tampa, Florida, on October 16, 2018.

        s/*William F. Jung*
        **WILLIAM F. JUNG**
        **UNITED STATES DISTRICT JUDGE**

COPIES FURNISHED TO:
Counsel of Record

---

*Account*, 2012 WL 12877749, at *5.