**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**THE ESTATE OF SHIRLEY T. COX,**
**by and through BETTY M. SMITH,**
**Personal Representative, JOHN E.**
**BALLEW, by and through JUDITH A.**
**BALLEW, Attorney-in-Fact, and THE**
**ESTATE OF ROGER J. LAPP, by and**
**through MARK F. LAPP, Personal**
**Representative,**

      **Plaintiffs,**

v.                              **Case No. 8:18-cv-381-WFJ-AAS**

**MARCUS & MILLICHAP,**
**INCORPORATED, et al.,**

      **Defendants.**
_____/

**REPORT AND RECOMMENDATION**

Defendants Marcus & Millichap Incorporated (MMI) and Michael Boker (collectively, the defendants) separately move to dismiss Plaintiffs, the Estate of Shirley T. Cox, by and through Betty M. Smith, Personal Representative, John E. Ballew, by and through Judith A. Ballew, Attorney-in-Fact, and the Estate of Roger J. Lapp, by and through Mark J. Lapp, Personal Representative's (collectively, the plaintiffs) Amended Complaint. (Docs. 89, 92). The plaintiffs oppose the defendants' motions to dismiss. (Doc. 121). After considering the parties' briefs, oral argument, and supplemental filings it is

**RECOMMENDED** that the defendants' motions to dismiss (Docs. 89, 92) be **GRANTED**.[1]

## I.   PROCEDURAL HISTORY

The plaintiffs filed this action in the Circuit Court of the Thirteenth Judicial Circuit, in and for Hillsborough County, Florida. (Doc. 1). Mr. Bokor and MMI removed the action to this court under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332. (Docs. 1, 2). MMI and Mr. Bokor then moved to dismiss the plaintiffs' complaint for lack of subject matter jurisdiction and failure to state a claim. (Docs. 13, 17). The plaintiffs then moved to remand this action back to state court. (Doc. 31). The court stayed resolution of the defendants' motions to dismiss pending the court's resolution of the plaintiffs' motion to remand. (Doc. 32).

The court granted the plaintiffs' motion and remanded the action to state court. (Doc. 46). Mr. Bokor appealed the remand order. (Doc. 49). The Eleventh Circuit issued an opinion reversing and remanding the proceedings to this court. (Doc. 67). The plaintiffs moved to file an amended complaint, which the court granted. (Docs. 80, 81). The amended complaint mooted the defendants'

---

[1] Because the undersigned recommends this action be dismissed, MMI's motion to stay pending administrative proceedings (Doc. 90) and Mr. Boker's motion to strike amended complaint exhibits (Doc. 93) should be denied as moot.

pending motions to dismiss. The plaintiffs filed an essentially unchanged amended complaint. (*See* Docs. 1, 82).

MMI and Mr. Bokor now move to dismiss the plaintiffs' amended complaint. (Docs. 89, 92). If the court denies Mr. Boker's motion to dismiss, Mr. Bokor requests that the court strike exhibits D, E1–E3, F, G, H1–H7, and I to the plaintiffs' amended complaint. (Doc. 93). Also, in the event the court denies MMI's motion to dismiss, MMI requests that the court stay the action pending administrative review. (Doc. 90). In response, the plaintiffs requested leave to file a second amended complaint. (Doc. 113). Mr. Bokor and MMI responded in opposition to the plaintiffs' motion to amend. (Docs. 116, 117).

The court denied the plaintiffs' motion for leave to file a second amended complaint and directed the plaintiffs to respond to the defendants' pending motions to dismiss, MMI's motion to stay pending administrative review, and Mr. Boker's motion to strike exhibits to the plaintiffs' amended complaint. (Doc. 118). The plaintiffs responded to the defendants' pending motions. (Docs. 108, 121, 122).

## II.    BACKGROUND

The plaintiffs were short term residents at three skilled nursing facilities in Florida.[2] The plaintiffs allege the three facilities skilled nursing facilities,

---

[2] Ms. Cox was a resident for under a month, Mr. Ballew was a resident for under two weeks, and Mr. Lapp was a resident for three months. (Doc. 82, ¶¶ 28, 31, 34).

and nineteen other short term skilled nursing facilities, had operational structures where one entity owned the land and buildings, a second entity held the operating license, and a third entity managed the facility.[3] (Doc. 82, ¶¶ 64, 66, 76, 84, 91). The plaintiffs allege the twenty-two skilled license facilities improperly obtained licenses from the Agency for Health Care Administration (AHCA) by omitting from their license applications that the facilities were operated by management companies—first Southern SNF Management, Inc. (SNF Management), then, Reliant Health Care Services, Inc. (Reliant) (*Id.* at ¶¶ 91, 92, 99). The plaintiffs allege they were injured because they paid for services at the "unlicensed" facilitates. (*Id.* at ¶ 104).

Mr. Bokor owns the management companies that managed the twenty-two skilled nursing facilities, including SNF Management and Reliant. The plaintiffs allege Mr. Bokor submitted the incorrect licensing applications on behalf of the facilities. (*Id.* at ¶¶ 88–112). MMI acted as the commercial broker that marketed the facilities on behalf of non-party landlords, who were part of a network of affiliated companies owned by Eliezer Scheiner and Teddy Lichtschtein. (*Id.* at ¶¶ 4, 44, 63–64). The plaintiffs allege MMI marketed the facilities, despite "knowing" that the facilities were not properly licensed. (*Id.* at ¶¶ 113–27).

---

[3] The named plaintiffs only resided at three of the twenty-two facilities listed in the amended complaint. (Doc. 82, ¶ 6).

The plaintiffs' amended complaint raises these causes of action against the defendants: (1) Aiding and Abetting Breach of Fiduciary Duties against MMI and Mr. Boker (Counts I, II); (2) Violations of Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §1962, et seq., against MMI and Mr. Boker (Count III, IV); and (3) Civil Conspiracy against MMI (Count V). (Doc. 82, pp. 42-60). In response, Mr. Boker and MMI separately move to dismiss the plaintiffs' amended complaint. (Docs. 89, 92).

The parties requested oral argument on the defendants' motions to dismiss. (Docs. 94, 123). Acknowledging oral argument would be beneficial, the undersigned heard oral argument and allowed the parties additional time to provide updated caselaw addressing the issues raised in the motions to dismiss. (Doc. 133). The plaintiffs and Mr. Boker provided supplemental caselaw. (Docs. 134, 135).

## III.  STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a motion to dismiss an action on the ground that the allegations in the complaint fail to state a claim upon which relief can be granted. "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (per curiam) (quoting *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir.

1993)). The court must draw "all reasonable inferences in the plaintiff's favor." *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). However, the court need not accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Federal Rule of Civil Procedure 12(b)(6) is read in consideration of Federal Rule of Civil Procedure 8(a)(2), which requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Although Federal Rule of Civil Procedure 8 does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

## IV.   ANALYSIS

Although MMI and Mr. Boker filed separate motions to dismiss, the undersigned will jointly address overlapping issues raised in the motions and response. (*See* Docs. 89, 92, 121).

### A.   Article III Standing

Federal courts are courts of limited subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). The party invoking subject matter jurisdiction bears the burden of

proving Article III standing. *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016). To establish standing, "[t]he plaintiff must have (1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.*

Here, the issue is the first element of standing—injury-in-fact. The plaintiffs must clearly and specifically set forth facts showing an injury-in-fact; conclusory allegations will not suffice. *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924–25 (11th Cir. 2020) (citation omitted). To establish injury-in-fact, the plaintiffs must show they suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S.Ct. at 1548 (citation and internal quotation marks omitted). A particularized injury is one that affects the plaintiff "in a personal individual way." *Id.* For the injury to be concrete, the injury must be "real," meaning that "it must actually exist" and not "abstract." *Id.*

The plaintiffs allege "[t]he *non-party* licensees, operators, managers, consultants, and owners of the [f]acilities have unlawfully charged the [p]laintiffs and similarly situated class members in excess of nine hundred million dollars ($900,000,000.00) for the provision of unlicensed skilled nursing services." (Doc. 82, ¶ 2) (emphasis added). The only particularized, concrete injury the plaintiffs allege is paying for services received at facilities that held

a license, but that the plaintiffs claim the license was improperly obtained or legally void.[4] (*Id.* at ¶ 104).

The plaintiffs' amended complaint asserts that the plaintiffs suffered injuries based on these alleged wrongdoings: (1) that certain non-party license holders "extract[e]d as much profit as possible" out of the facilities (*Id.* at ¶ 67); (2) that the facilities provided "substandard levels of care" (*Id.* at ¶ 69); (3) that the facilities improperly filed claims with Medicare and Medicaid (*Id.* at ¶¶ 55–56, 73–82, 104); and (4) that the non-party license-holding entities are "undercapitalized shells." (*Id.* at ¶ 85).

The plaintiffs allege the non-party landowning and license-holding entities participated in a common enterprise to extract profit out of the facilities, which resulted in the facilities' residents receiving "substandard levels of care." (*Id.* at ¶¶ 67, 69). However, the plaintiffs do not allege they

---

[4] The plaintiffs' claim that the facilities' licenses were legally void ab initio fails as a matter of law. Chapters 400 and 408 of the Florida Statutes govern Florida's nursing facility licensing process. Under these chapters, AHCA has exclusive authority to issue nursing facility licenses and exclusive discretion to revoke those licenses for a variety of statutorily limited grounds, including material licensure omissions. *See* Fla. Stat. § 408.815(1)(a). Although Florida law authorizes AHCA to "revoke or suspend a license" or "impose an administrative fine," it does not authorize AHCA to declare the license void ab initio. *See* Fla. Stat. § 400.121(1) (defining administrative penalties for nursing facility violations).

personally experienced "substandard care," much less that the care provided had any connection to the licensure of the facilities or the named defendants.[5]

The plaintiffs also allege the "management companies" and "purported licensees" made improper rent and reimbursement claims to Medicaid and Medicare. (*Id.* at ¶¶ 55–56, 73–82, 104, 144(d), 166(e)(5)). Again, the plaintiffs do not state how this allegation, even if true, resulted in personal injuries.[6] *See Ayers v. Beaver*, 48 F. Supp. 2d 1335, 1339–40 (M.D. Fla. 1999) ("Congress did not intend to provide a private right of action under the Medicare or Medicaid Acts.").

As for the plaintiffs' allegation that, by being undercapitalized, the license holding entities may one day limit their "potential liability … to future creditors, including Plaintiffs and the Class members," this alleged injury is a purely speculative future injury and provides no connection to MMI or Mr.

---

[5] A Florida trial court rejected similar claims raised in a separate action by the plaintiffs' counsel against Mr. Bokor. *See The Est. of Joellen Brainerd v. Bokor, et al.*, No. 2018-CA-000204 (Fla. Cir. Ct. Sep. 18, 2018) ("[E]ngaging in an 'economy of scale' is generally not a 'casual connection to an injury.'"). (Doc. 92, Ex. 1). *See also The Estate of Ora Katherine Smith v. Parklands Facility, Inc. et al.*, No. 2020 CA-3211 (Fla. 8th Cir. Sept. 30, 2021); *The Estate of Ethel M. McKenzie v. Woodbridge Facility, Inc.*, No. 20-CA-2705 (Fla. 13th Cir. Sept. 17, 2021) (Doc. 135, Exs. 1, 2).

[6] *See The Est. of Joellen Brainerd v. Bokor, et al.*, No. 2018-CA-000204 (Fla. Cir. Ct. Sep. 18, 2018) (holding there is no known legal basis for the plaintiff to have standing to assert allegations on behalf of others). (Doc. 92, Ex. 1). *See also The Estate of Ora Katherine Smith v. Parklands Facility, Inc. et al.*, No. 2020 CA-3211 (Fla. 8th Cir. Sept. 30, 2021); *The Estate of Ethel M. McKenzie v. Woodbridge Facility, Inc.*, No. 20-CA-2705 (Fla. 13th Cir. Sept. 17, 2021) (Doc. 135, Exs. 1, 2).

Boker. *See Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) ("Allegations of possible future injury do not satisfy the requirements of Art. III. A threatened injury must be 'certainly impending' to constitute injury in fact.") (internal citation and quotation omitted); *Johnson v. Bd. of Regents of the Univ. of Ga.*, 263 F.3d 1234, 1265 (11th Cir. 2001) ("[T]o have standing to obtain forward-looking relief, a plaintiff must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future.").

The alleged wrongdoings of the defendants (and other non-party facilities and license holders) are speculative or unconnected to the plaintiffs' alleged injuries—paying for services received at short-term nursing facilities that allegedly did not hold valid licenses.[7] *See Scharrer v. Fundamental Admin. Servs.*, LLC, No. 8:12-CV-1854, 2013 WL 12169309, at *2 (M.D. Fla. Sept. 10, 2013) ("[The plaintiffs must] demonstrate a causal connection between the asserted injury-in-fact and the challenged action of the defendant."). Thus, the plaintiffs failed to establish an injury in fact and this action should be dismissed for lack of standing.

---

[7] The undersigned will not address the defendants' argument that the plaintiffs failed to join indispensable parties because the remedy would be to join those parties. *See PPI, Inc. v. Kempthorne*, No. 4:08-CV-248-SPM, 2008 WL 2705431, at *4 (N.D. Fla. July 8, 2008). Here, the plaintiffs failed to allege an injury-in-fact and the action should be dismissed for lack of subject matter jurisdiction.

### B.    Failure to State a Claim[8]

To survive a motion to dismiss, a complaint must state on its face a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Unless the plaintiffs have "nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

The plaintiffs' amended complaint raises claims against MMI and Mr. Boker for aiding and abetting a breach of fiduciary duty (Counts I and II) and violations of RICO, 18 U.S.C. § 1962, et seq. (Counts III and IV). (Doc. 82, pp. 42–55). The amended complaint also raises a conspiracy claim against MMI (Count V). (*Id.* at pp. 55–60).

### 1.    Aiding and Abetting a Breach of Fiduciary Duty Against MMI (Count I) and Mr. Boker (Count II)

"Under Florida law, a plaintiff bringing a claim for aiding and abetting a breach of fiduciary duty must sufficiently allege: (1) a fiduciary duty on the part of the wrongdoer; (2) a breach of fiduciary duty; (3) knowledge of the

---

[8] Although the court recommends dismissing this action for lack of subject matter jurisdiction, the undersigned will address additional grounds for dismissal due to the referral of the motions to the undersigned.

breach by the alleged aider and abettor; and (4) the aider and abettor's substantial assistance or encouragement of the wrongdoing." *S&B/BIBB Hines PB 3 Joint Venture v. Progress Energy Fla., Inc.*, 365 F. App'x 202, 207 (11th Cir. 2010); *Fonseca v. Taverna Imports, Inc.*, 212 So. 3d 431, 442 (Fla. 3rd DCA 2017). A fiduciary duty is "the highest standard of duty implied by law" which imposes the obligation "to act for someone else's benefit, while subordinating one's personal interest to that of the other person." *Reimsnyder v. SouthTrust Bank, N.A.*, No. CL 01-3864 AO, 2001 WL 36207301 (Fla. Cir. Ct. Nov. 16, 2001) (quoting *Fed. Deposit Ins. Corp. v. Stahl*, 854 F. Supp. 1565, 1572 (S.D. Fla. 1994)).

Although the skilled nursing facilities owed a duty of care to their residents under Chapter 400 of the Florida Statutes there are no allegations to support the assertion that MMI or Mr. Boker owed such a duty, much less any fiduciary duty, to the plaintiffs. Chapter 400 defines the duties nursing facilities owe their residents, including duties such as to provide care, respect civil liberties, and provide private communications. *See* Fla. Stat. § 400.022. Chapter 400 does not, however, impose a fiduciary duty on nursing facility management companies or businesses that marketed the facilities.[9] *See id.*

---

[9] *See The Est. of Joellen Brainerd v. Bokor, et al.*, No. 2018-CA-000204 (Fla. Cir. Ct. Sep. 18, 2018) (holding that because "there are no facts supporting the creation of a duty outside of generic admission into a nursing home, Plaintiff has not sufficiently alleged a fiduciary duty"). (Doc. 92, Ex. 1).

In addition, no allegations support the claim that MMI or Mr. Boker provided substantial assistance to the alleged breach of fiduciary duty. *See S&B/BIBB Hines PB 3 Joint Venture*, 365 F. App'x at 207 (affirming dismissal of a claim for aiding and abetting a breach of fiduciary duty under Florida law, where the allegations on the "substantial assistance or encouragement" element were little more than "conclusory allegations"); *VM Glob. Partners, LLC v. Laxai Pharma, Ltd.*, No. 8:14-cv-01343-T-27EAJ, 2015 WL 1612009, at *2 (M.D. Fla. Apr. 9, 2015) (dismissing such a claim when the plaintiffs failed to sufficiently allege facts suggesting that the defendants knew of the breaches of fiduciary duty or assisted or encouraged them); *see also Turnberry Vill. N. Tower Condo. Ass'n, Inc. v. Turnberry Vill. S. Tower Condo. Ass'n, Inc.*, 224 So. 3d 266, 267 (Fla. 3rd DCA 2017) ("Appellant's amended complaint contained a mechanical recitation of the elements of the cause of action, and, in particular, only conclusory allegations . . . This is insufficient to withstand a motion to dismiss.").

Thus, Counts I and II of the plaintiffs' amended complaint should be dismissed for failure to state a plausible claim plausible MMI and Mr. Boker for aiding and abetting a breach of fiduciary duty.

### 2.    RICO Claims Against MMI (Count III) and Mr. Boker (Count IV)

The plaintiffs allege MMI and Mr. Bokor violated subsections (b), (c), and (d) of RICO, 18 U.S.C. § 1962. (Doc. 82, pp. 47–55). Congress enacted RICO in 1970 to prohibit racketeering activity connected to interstate commerce. *Ray v. Spirit Airlines, Inc.*, 767 F.3d 1220 (11th Cir. 2014).

Section 1962 provides:

(b)    It shall be unlawful for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c)    It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . .

(d)    It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. §§ 1962(b)–(d). These elements must be present to establish a RICO cause of action: (i) conduct; (ii) of an enterprise; (iii) through a pattern; (iv) of racketeering activity. *Lehman v. Lucom*, 727 F.3d 1326, 1330 (11th Cir. 2013). In addition, "a civil RICO claim must sufficiently plead proximate cause." *Ray v. Spirit Airlines*, 836 F.3d 1340, 1351 (11th Cir. 2016).

### i.      Pattern of Predicate Acts

Section 1962(c) makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or unlawful collection of debt." "To successfully allege a pattern of racketeering activity, plaintiffs must charge that: (1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a continuing nature." *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1264 (11th Cir. 2004).

Section 1961(1) contains a list of racketeering acts, which are otherwise called predicate acts. 18 U.S.C. § 1961(1); *see also Beck v. Prupis*, 529 U.S. 494, 497 n.2 (2000). The plaintiffs allege these four types of predicate acts in support of their RICO claim: (1) violations of 18 U.S.C. § 1035 (false statements relating to health care matters); (2) violation of 18 U.S.C. § 1343 (wire fraud); (3) violations of 18 U.S.C. § 1341 (mail fraud); and (4) violation of 18 U.S.C. § 1956 (laundering of monetary instruments). (Doc. 82, ¶ 156(a)–(g), ¶ 166(a)–(g)). Violating 18 U.S.C. § 1035 is not included in § 1961(1)'s exhaustive predicate act list. Thus, an alleged violation of 18 U.S.C. § 1035 cannot support a RICO claim.

Predicate act allegations are subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. *Price v. Lakeview Loan Serv., LLC*, 2021 WL 1610097, at *9 (M.D. Fla. Apr. 26, 2021). For the plaintiffs to satisfy the Rule 9(b) standard, they must allege: "(1) precisely what statements were made in what documents or oral representations," "(2) the time and place of each such statement and the person responsible for making" it, "(3) the content[s] of such statements and the manner in which they misled the plaintiff," and "(4) what the defendants obtained as a consequence." *Brooks v. Blue Cross & Blue Shield of Fla.*, 116 F.3d 1364, 1371 (11th Cir. 1997).

The plaintiffs' predicate act allegations turn on the contention that Mr. Bokor submitted false Medicaid and Medicare claims for unlicensed services and MMI created and distributed a brochure to market the subject nursing facilities. The allegations in the amended complaint are simply a "formulaic recitation" of the elements of the offense, without the requisite pleading requirements of Federal Rule of Civil Procedure 9(b). *See Iqbal*, 556 U.S. at 678 ("[F]ormulaic recitation[s] of the elements of a cause of action" are insufficient.). Thus, the plaintiffs' allegations of predicate acts necessary to bring a claim under RICO are unsupported.

## ii.   Proximate Cause of Injury

The RICO statute provides a cause of action for "[a]ny person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. §

16

1964(c). A party is only entitled to recover under RICO "to the extent that [ ] he has been injured in his business or property by the conduct constituting the violation." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). A defendant who commits an act of racketeering is "not liable for treble damages to everyone he might have injured by other conduct, nor is the defendant liable to those who have not been injured." *Id.* at 496–97 (citation omitted). Rather, pleading a civil RICO claim requires that the plaintiffs plead facts sufficient to give rise to a reasonable inference that the claimed racketeering activity— here, MMI creating and marketing a brochure for the subject facilities and Mr. Boker managing the facilities and filing claims allegedly without proper licensure—was the but-for and proximate cause of the plaintiffs' injuries. *See Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 712 (11th Cir. 2014).

There are no allegations in the amended complaint that the plaintiffs relied on or even viewed the brochure created by MMI. Nor did MMI broker any sales with the plaintiffs. Likewise, Mr. Boker's role in the licensure of the facilities (only three of the twenty-two named facilities were occupied by the plaintiffs) did not injure the plaintiffs. In addition, the alleged fraudulent claims made to Medicare or Medicaid would cause an injury to Medicare or Medicaid, not the plaintiffs. *See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006) (holding the connection between the racketeering activity and the injury can be neither remote, purely contingent, nor indirect).

17

The plaintiffs fail to establish the defendants were the proximate cause of any injury to the plaintiffs. Thus, the plaintiff claims under RICO, 18 U.S.C. § 1962(b) and (c) fail.

### iii.    RICO Conspiracy

"If the underlying cause of action is not viable, the conspiracy claim must also fail." *Spain v. Brown & Williamson Tobacco Corp.*, 363 F.3d 1183, 1199 (11th Cir. 2004) (internal quotation marks and citation omitted). The complaint failed to state a substantive RICO claim. Because of this fatal pleading defect, the plaintiffs' RICO conspiracy claims under 18 U.S.C. § 1962(d) cannot survive the defendants' motion to dismiss.

### 3.    Civil Conspiracy Against MMI (Count V)

To state a claim for civil conspiracy a plaintiff must allege: "(1) two or more parties (2) agreed (3) to commit an unlawful act." *American United Life Insurance Co. v. Martinez*, 480 F.3d 1043, 1067 (11th Cir. 2007). "A conspiracy claim fails if the underlying act would not support an independent claim." *Roche Diagnostics Corp. v. Priority Healthcare Corp.*, 407 F. Supp. 3d 1216, 1250 (N.D. Ala. 2019) (citation omitted).

Here, the unlawful act that MMI is accused of committed is creating a brochure presented to non-parties—not to the plaintiffs—to market the subject skilled nursing facilities. Such activity is not unlawful. In addition, there are no allegations that MMI agreed to commit an unlawful act. *See Blevins v.*

18

*Aksut*, No. 15-00120-CG-B, 2017 WL 10410658, at *11 (S.D. Ala. Oct. 27, 2017) ("However, conclusory allegations, accompanied by nothing more than a bare assertion of a conspiracy, do not plausibly suggest a conspiracy."). Thus, the plaintiffs' civil conspiracy claim against MMI fails to state a plausible cause of action.

### C.   Jurisdiction Over AHCA Licensure Grievances

Florida law charges AHCA with administering, interpreting, and enforcing the laws and rules regulating nursing facilities. *See, e.g.*, Fla. Stat. § 400.23(2) ("[T]he agency … shall adopt and enforce rules to implement this part and part II of chapter 408."). AHCA also has jurisdiction over administering and revoking nursing facility licenses. *See* Fla. Stat. § 400.121(1) ("The agency may deny an application, revoke or suspend a license, and impose an administrative fine, not to exceed $500 per violation."). AHCA is responsible for redressing alleged violations of the statutes and regulations governing nursing facilities, including alleged violations of the application process. *See id.*

Thus, the plaintiffs' claims about improper licensing of skilled nursing facilities should be addressed by AHCA, not this court. *See Tampa Interstate 75 Ltd. P'ship v. Fla. Gas Transmission Co.*, 294 F. Supp. 2d 1277, 1279 (M.D. Fla. 2003) ("Where the issues raised require the expertise of administrative agencies, federal courts often decline to exercise … jurisdiction and refuse to

hear the claim based on the doctrine of primary jurisdiction.");[10] *see also Gilmore v. Life Care Centers of America, Inc.*, No. 2:10-cv-99-FtM-29DNF, 2012 WL 124030, at *2 (M.D. Fla. 2012) ("Florida Statutes §§ 400.023–400.0238 provide the exclusive remedy for the personal injury or death of a nursing home resident arising out of negligence or a violation of rights specified in that chapter.").

### D.   State Litigation Against Mr. Boker and his Companies

The plaintiffs and their law firm, Wilkes & McHugh, PA, filed close to thirty similar cases against Mr. Bokor and his companies in Florida. (*See* Doc. 92, Ex. 3). Indeed, one such case was filed on behalf of one of the plaintiffs in this action, Mr. Lapp. *See The Est. of Roger J. Lapp v. Citrus Nursing Center, LLC*, No. 2017-CA-467 (Fla. Cir. Ct. Feb. 27, 2020). Mr. Lapp's case was dismissed by the Circuit Court of the Fifth Judicial Circuit in and for Citrus County, Florida, and the court's dismissal was affirmed on appeal by the Fifth District Court of Appeal, *The Est. of Roger J. Lapp v. Citrus Nursing Ctr.*, No. 5D20-852 (Fla. 5th DCA 2021) (per curiam). (*See* Doc. 92, Exs. 2, 4).

---

[10] The primary jurisdiction doctrine is a common-law doctrine "concerned with protecting the administrative process from judicial interference." *Boyes v. Shell Oil Prods. Co.*, 199 F.3d 1260, 1265 (11th Cir. 2000). The doctrine "allows courts to refer issues or cases to an administrative agency when a claim involves issues which, 'under a regulatory scheme, have been placed within the specifical competence of an administrative body.'" *LSSi Data Corp. v. Comcast Phone, LLC*, No. 1:11-CV-1246-CAP, 2013 WL 12244044, at *8 (N.D. Ga. Mar. 4, 2013) (quoting *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956)).

Mr. Boker requests that the claims brought by Mr. Lapp be dismissed under res judicata and the claims brought by the other plaintiffs be dismissed under the precedent created in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

### 1.    Res Judicata

Federal courts are required to "give preclusive effect to a state court judgment to the same extent as would courts of the state in which the judgment was entered." *Brown v. R.J. Reynolds Tobacco Co.*, 611 F.3d 1324, 1331 (11th Cir. 2010) (quoting *Kahn v. Smith Barney Shearson, Inc.*, 115 F.3d 930, 933 (11th Cir. 1997)). When a court is asked to give res judicata effect to a prior state court judgment, the state law of res judicata applies. *Amey, Inc. v. Gulf Abstract & Title, Inc.*, 758 F.2d 1486, 1509 (11th Cir. 1985).

Under Florida law, res judicata (or claim preclusion) "bars relitigation in a subsequent cause of action not only of claims raised, but also claims that could have been raised." *Topps v. State*, 865 So. 2d 1253, 1255 (Fla. 2004). It applies "when four identities are present: (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of persons and parties to the action; and (4) identity of the quality of the persons for or against whom the claim is made." *Id.*

Mr. Lapp's aiding and abetting breach of fiduciary duty claim against Mr. Bokor contains nearly identical allegations as those raised and dismissed

by the Fifth Judicial Circuit and the Fifth District Court of Appeal. (*See* Doc. 92, Ex. 6). As for Mr. Lapp's federal RICO claim, it "arises out of the same nucleus of operative fact" as the dismissed state case—allegations about the same short term skilled nursing facilities' licensures. *See Brennan v. Lyon*, 915 F. Supp. 324, 326 (M.D. Fla. 1996) (precluding the plaintiff's un-litigated federal RICO claim). Mr. Lapp sues Mr. Bokor personally here, while in state court he sued Mr. Boker's company, Reliant. For claim preclusion purposes, Mr. Bokor and his company may be considered the same entity. *See Heney v. Windsor Corp.*, 777 F. Supp. 1575, 1577 (M.D. Fla. 1991).

Because Mr. Lapp "sued the same defendants, or those in privity with them, for the same relief on substantially the same claims, arising from the same incident," Mr. Lapp is precluded from relitigating his failed claims in this court. *See Radle v. Allstate Ins. Co.*, 758 F. Supp. 1464, 1468 (M.D. Fla. 1991).

### 2.   *Colorado River*

In *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), the Supreme Court addressed the circumstances in which federal courts may abstain from exercising their jurisdiction because of the existence of a parallel proceeding in one or more state courts. *See also Ambrosia Coal &*

*Constr. Co. v. Pagés Morales*, 368 F.3d 1320, 1327 (11th Cir. 2004).[11] The Supreme Court held that, under limited circumstances, a federal court may stay or dismiss an action "on considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Colorado River*, 424 U.S. 800 (citation omitted).

The *Colorado River* analysis applies when federal and state proceedings "involve substantially the same parties and substantially the same issues." *Id.* at 1330. The federal and state proceedings, however, need not contain identical parties, issues, and requests for relief. *Id.* A federal court considers six factors in determining the propriety of abstention: (1) whether one of the courts has assumed jurisdiction over property, (2) the inconvenience of the federal forum, (3) the potential for piecemeal litigation, (4) the order in which the fora obtained jurisdiction, (5) whether state or federal law will be applied, and (6) the adequacy of the state court to protect the parties' rights.[12] *Ambrosia Coal*, 368 F.3d at 1330 (11th Cir. 2004). These factors are to be applied flexibly and pragmatically, and no one factor is necessarily determinative. *Id.* at 1331–32 (citations omitted). And the court should consider "the vexatious or reactive

---

[11] Although the Supreme Court did not use the word "abstention" in *Colorado River*, lower courts applying the case generally do. *See Harder v. Rafferty*, 709 F. Supp. 1111, 1114-16 (M.D. Fla. 1989).

[12] Because neither the state nor federal court has assumed jurisdiction over any property here, factor one is irrelevant. Factors two and three are neutral because both forums are equally convenient both forums can protect the parties' rights.

nature of either the federal or the state litigation" in deciding whether abstention under *Colorado River* is warranted. *Id.* at 1331 (citation omitted).

Here, the federal forum is in the Middle District of Florida and state forums are throughout Florida in Judicial Circuits for Hillsborough County, Escambia County, Pinellas County, Lake County, Sumter County, Citrus County, and Broward County. (*See* Doc. 92, Ex. 3). The state and federal cases involve substantially the same parties and substantially the issues. (*See* Doc. 92, Ex. 3). All the cases were filed by the plaintiffs' law firm. The named plaintiffs in the state cases are members of the putative class in this action. (*Id.*). Mr. Bokor and his management companies, Reliant and Southern SNF, are named as defendants in the state cases. (*Id.*). The state cases allege claims for aiding and abetting a breach of fiduciary duty. The state cases contain analogous allegations based on the same operative facts as this action—the plaintiffs' stay at an unlicensed short term skilled nursing facility allegedly injured the plaintiffs. *See Ambrosia Coal & Const. Co.*, 368 F.3d at 1330–31 (finding substantial similarity even where the federal case had separate "RICO counts" and some parties did not overlap).

The state cases have progressed further than this action. (*See* Doc. 92, Ex. 3); *see also Baker v. Warner/Chappell Music*, 759 F. App'x 760, 764 (11th Cir. 2018) ("Given the progress made in state court, this *Colorado River* factor weighs in favor of abstention."). In addition, state law predominates in this

action because the action stems from issues concerning Florida nursing home licenses, registrations, and regulations. Rather than pursing either individual cases or a single class action against Mr. Bokor, the plaintiffs' counsel brought nearly thirty cases in seven counties throughout Florida. This litigation strategy "invites piecemeal litigation and assorted other vexing mischief."[13] *See Kaplan v. Kaplan*, 903 F. Supp. 2d 1304, 1311–12 (M.D. Fla. 2012).

If this case is not dismissed for the reasons addressed above, the undersigned recommends a finding that the circumstances warrant *Colorado River* abstention. *See Willson v. Bank of Am.*, N.A., 684 F. App'x 897, 900 (11th Cir. 2017) (affirming abstention based on two *Colorado River* factors).[14]

## V.   CONCLUSION

The plaintiffs lack standing to proceed because they failed to establish a specific, concrete injury in fact. *See Spokeo*, 136 S.Ct. at 1548. In addition, the plaintiffs failed to state a plausible claim against the defendants upon which relief can be granted. Further, the plaintiffs' sole grievance of improper

---

[13] Indeed, two of the pending state court actions have already been dismissed. *See The Estate of Ora Katherine Smith v. Parklands Facility, Inc. et al.*, No. 2020 CA-3211 (Fla. 8th Cir. Sept. 30, 2021); *The Estate of Ethel M. McKenzie v. Woodbridge Facility, Inc.*, No. 20-CA-2705 (Fla. 13th Cir. Sept. 17, 2021) (Doc. 135, Exs. 1, 2).

[14] The undersigned notes that courts have found "a stay, not a dismissal, is the proper procedural mechanism for a district court to employ when deferring to a parallel state-court proceeding under the *Colorado River* doctrine." *Moorer v. Demopolis Waterworks & Sewer Bd.*, 374 F.3d 994, 998 (11th Cir. 2004). Here, for the other reasons stated in this Report and Recommendation, dismissal is appropriate.

licensing of Florida skilled nursing facilities should be addressed by AHCA, not this court. Finally, because Mr. Lapp and other of the plaintiffs' counsel's clients brought nearly identical claims in state court by suing the same defendants, or those in privity with them, for the same relief based on the same operative facts, the court should abstain from deciding this action.

Accordingly, it is **RECOMMENDED** that:

(1)    MMI's motion to dismiss the plaintiffs' amended complaint (Doc. 89) be **GRANTED**.

(2)    Mr. Boker's motion to dismiss the plaintiff's amended complaint (Doc. 92) be **GRANTED**.

(3)    MMI's motion to stay pending administrative review (Doc. 90) be **DENIED as moot**.

(4)    Mr. Boker's motion to strike the plaintiff's amended complaint exhibits D, E1-E3, F, G, H1-H7, and I (Doc. 93) be **DENIED as moot**.

**ENTERED** in Tampa, Florida on January 24, 2022.

_Amanda Arnold Sansone_
AMANDA ARNOLD SANSONE
United States Magistrate Judge

**NOTICE TO PARTIES**

The parties have fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1. A party's failure to object timely in accordance with 28 U.S.C. § 636(b)(1) waives that party's right to challenge on appeal the district court's order adopting this report's unobjected-to factual findings and legal conclusions. 11th Cir. R. 3-1.